IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALFREDO LOPEZ and JULIO HUESCA, Individually and on behalf of all others similarly situated, | § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | Civil Action No. 3:16-CV-2595-D |
| RELIABLE CLEAN-UP AND SUPPORT SERVICES, LLC, RELIABLE BROTHERS CONSTRUCTION, LLC, DANIEL SANTOS, and LUCIANO SANTOS, | § § § § § | |
| Defendants. | § § | |

MEMORANDUM OPINION
AND ORDER

In this action seeking unpaid overtime pay under the Fair Labor Standards Act of 1938

("FLSA"), 29 U.S.C. § 201 *et seq.*, defendants move for summary judgment on all claims

and for leave to file a first amended answer and counterclaim. Plaintiffs cross-move for

partial summary judgment establishing that defendants are liable under the FLSA. Because

there are genuine and material fact issues regarding the essential elements of plaintiffs'

claims, the court denies defendants' motion for summary judgment and denies plaintiffs'

motion for partial summary judgment. The court also denies defendants' motion for leave

to file a first amended answer and counterclaim.

Defendants Luciano Santos ("Luciano") and Daniel Santos ("Daniel"), who are brothers, own two companies: defendant Reliable Clean-Up and Support Services, LLC ("Reliable Clean-Up") and Reliable Brothers Construction, LLC ("Reliable Brothers") (collectively, "Reliable").[1] Luciano and Daniel founded Reliable Clean-Up 22 years ago, specializing in clean-up work at construction sites. They founded Reliable Brothers approximately two years ago with the goal of entering the construction business. They allege that Reliable Brothers is now defunct, and that, in its brief existence, it only performed the same type of construction site clean-ups as Reliable Clean-Up. Although they Daniel and Luciano acknowledge that they are both owners of these companies, Daniel labels himself as a "passive owner," while Luciano states that he plays a more active role in day-to-day operations.

Plaintiffs Alfredo Lopez ("Lopez"), Julio Huesca ("Huesca"), and other individuals worked as cleaners for Reliable. Lopez worked for Reliable from 2007 through 2016, while Huesca worked there from 2013 through 2015. Guillermo Gomez Zavala ("Gomez"), an opt-in plaintiff, worked for Reliable "from approximately 2007 or 2008 until approximately April

---

[1]Because both sides move for summary judgment, the court will recount the evidence that is undisputed, and, when it is necessary to set out evidence that is contested, will do so favorably to the side who is the summary judgment nonmovant in the context of that evidence. *See, e.g., GoForIt Entm't, LLC v. DigiMedia.com L.P.*, 750 F.Supp.2d 712, 718 n.4 (N.D. Tex. 2010) (Fitzwater, C.J.) (quoting *AMX Corp. v. Pilote Films*, 2007 WL 1695120, at *1 n.2 (N.D. Tex. June 5, 2007) (Fitzwater, J.)). Because of the many disputed facts in this case, it is often necessary for the court to present both sides of the dispute.

of 2016." Ps. App. 128. Their work for Reliable consisted of various tasks, including general cleaning of commercial buildings, window cleaning, post-construction clean-up, demolition, and remodeling work. Reliable's workers would typically perform these tasks in crews of 3 to 10 people. Lopez and Guillermo state that they stopped working for Reliable after Daniel fired them, while Huesca states that he quit. Defendants contest that they fired any plaintiff, maintaining instead that Luciano chose not to "subcontract" with each plaintiff after a certain period of time.

The parties present strikingly different accounts of their working relationship and of Reliable's method of compensation. Plaintiffs maintain that Reliable compensated them through a mixed compensation system, with the vast majority being hourly wages and occasional jobs being compensated at a flat lump sum payments. They contend that Reliable had its workers fill out time sheets to record their hours. According to plaintiffs, for the jobs that were compensated at an hourly rate, Reliable paid them at the same rate for all hours worked. Plaintiffs further maintain that, when they worked more than 40 hours, all of their hours were compensated at the regular hourly rate.

Defendants contest plaintiffs' version of the facts. They maintain that they compensated workers at weekly flat rates per job; they broke down these weekly flat rates into hourly wages at plaintiffs' request, so that the plaintiffs could receive W2s and have taxes taken out of their pay; and that plaintiffs over reported their hours on their time sheets.

Lopez and Huesca brought this suit against defendants on September 9, 2016, asserting claims for unpaid overtime under the FLSA. Gomez later joined as an opt-in

plaintiff. Defendants shared relevant payroll information—including hourly rates, pay stubs, and time sheets—in January 2017, and plaintiffs in turn shared their calculations based on these records in March 2017. Defendants' first counsel withdrew on May 9, 2017, and their current counsel entered a notice of attorney appearance on June 6, 2017. In response to defendants' formal discovery requests in August 2017, plaintiffs formally produced to defendants the same time sheets and payroll records that defendants had previously produced informally. During this time period, the court extended the deadlines to complete discovery three times.

Defendants now for summary judgment on each of plaintiffs' FLSA claims. Plaintiffs cross-move for partial summary judgment establishing that defendants are liable under the FLSA. One week after both sides filed their summary judgment motions, defendants also moved to file a first amended answer and counterclaim, seeking to change several admissions made in their original answer, add an affirmative defense for fraud, and add a counterclaim for fraud. All motions are opposed.

II

The court first considers defendants' motion for leave to file an amended answer and counterclaim.

A

When, as here, the deadline for seeking leave to amend pleadings has expired, a court considering a motion to amend must first determine whether to modify the scheduling order

under the good cause standard of Fed. R. Civ. P. 16(b)(4). *See S & W Enters., L.L.C. v. South Trust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003); *Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 814 (N.D. Tex. 2009) (Fitzwater, C.J.). To meet the good cause standard, the moving parties must show that, despite their diligence, they could not reasonably have met the scheduling order deadline. *See S & W Enters.*, 315 F.3d at 535. Only if the movants first satisfy the requirements of Rule 16(b)(4) must the court next determine whether to grant leave to amend under the more liberal standard of Rule 15(a)(2), which provides that "[t]he court should freely give leave when justice so requires." Rule 15(a)(2); *see S & W Enters.*, 315 F.3d at 536; *Valcho*, 658 F.Supp.2d at 814.

The court assesses four factors when deciding whether to grant an untimely motion for leave to amend under Rule 16(b)(4): "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *S & W Enters.*, 315 F.3d at 536 (internal quotation marks and brackets omitted). "The 'good cause' standard focuses on the diligence of the party seeking to modify the scheduling order." *Cut-Heal Animal Care Prods., Inc. v. Agri-Sales Assocs.*, Inc., 2009 WL 305994, at *1 (N.D. Tex. Feb. 9, 2009) (Fitzwater, C.J.). Mere inadvertence on the part of the movants is insufficient to constitute "good cause." Instead, the movants must show that, despite their diligence, they could not have reasonably met the scheduling deadline. *See Am. Tourmaline Fields v. Int'l Paper Co.*, 1998 WL 874825, at *1 (N.D. Tex. Dec. 7, 1998) (Fitzwater, J.).

A court must "more carefully scrutinize a party's attempt to raise new theories . . . by amendment when the opposing party has filed a motion for summary judgment." *Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir.1999) (per curiam). This court has frequently found prejudice when a party seeks leave to amend as a means of staving off an opposing party's motion for summary judgment. *See, e.g., Valcho*, 658 F.Supp.2d at 815 (denying motion for leave to amend after summary judgment motion filed); *Home Depot U.S.A., Inc. v. Nat'l Fire Ins. Co. of Hartford*, 2007 WL 2592353, at *3 (N.D. Tex. Sept. 10, 2007) (Fitzwater, J.) (reaching same conclusion regarding motion to amend to add counterclaim); *AMS Staff Leasing, NA, Ltd. v. Associated Contract Truckmen, Inc.*, 2005 WL 3148284, at *11 (N.D. Tex. Nov. 21, 2005) (Fitzwater, J.) (same).

B

Defendants move to amend their pleadings in two principal ways. First, they seek to add a counterclaim and affirmative defense of fraud. Second, they seek to change several of their responses to plaintiffs' allegations in the original complaint ("complaint"). In their answer to the complaint, defendants admitted that Reliable was an "enterprise engaged in commerce," as defined under the FLSA, and that both Luciano and Daniel "have the power to act on behalf of [Reliable] vis-à-vis its employees, including the power to establish company pay practices, and to hire and fire employees." Answer ¶¶13, 14, 17 & 18. Defendants' proposed amended answer would deny that Reliable is an "enterprise engaged in commerce" and would deny that Daniel had any control over Reliable's employees.

Defendants maintain that amending to add the counterclaim for fraud is justified under the Rule 16(b)(4) standard.[2] They contend that the failure to timely comply with the deadline to amend the pleadings is reasonable because the fraud was only discovered in the course of a deposition taken in February 2018; the proposed counterclaim is important because it is critical to an effective defense of the case; there is no prejudice to plaintiffs; and supplementing discovery, if necessary, would cure any existing prejudice.

Plaintiffs respond that the motion to leave should be denied. They maintain that defendants' explanation for their failure to amend timely is illogical because the facts they depend on for fraud were available long before the February 2018 deposition; plaintiffs would be materially prejudiced if the counterclaim were added at this late stage; no continuance would address this prejudice; and granting leave to amend would be futile because defendants' proposed defense and counterclaim would be subject to dismissal.

C

1

The court first looks to defendants' explanation for failing to timely move for leave to amend.

---

[2]Defendants also contend that Rule 13(e) provides an independent basis to grant leave to amend. Rule 13(e) states that a "court may permit a party to file a supplemental pleading asserting a counterclaim that matured or was acquired by the party after serving an earlier pleading." Rule 13(e). Here, however, any fraud claim matured at the time plaintiffs allegedly submitted fraudulent time sheets, well before defendants filed their answer. Therefore, Rule 13(e) is not available to defendants as a procedural mechanism for obtaining leave to amend.

Plaintiffs filed this suit on September 9, 2016. On December 27, 2016 the court entered a scheduling order setting July 3, 2017 as the deadline for filing motions for leave to amend the pleadings. That same month, plaintiffs informally requested that defendants share relevant payroll information, including hourly rates, pay stubs, and time sheets. Defendants provided these documents in January 2017, and in March 2017 plaintiffs provided their calculations based on these records. Defendants' first counsel withdrew on May 9, 2017, and their current counsel entered an appearance on June 6, 2017. In response to defendants' formal discovery requests in August 2017, "[p]laintiffs formally produced back to [d]efendants the same time sheets and payroll records that [d]efendants had previously produced informally." Ps. Resp. to Mot. to Amend 4.

Luciano was deposed on February 7, 2018. At this deposition, plaintiffs' counsel reviewed with Luciano several payroll documents that defendants had produced over one year beforehand. During this questioning, Luciano contested the accuracy of the number of hours worked and insisted that the numbers indicated that plaintiffs were "stealing" from him. Ps. App. 232. Later in the deposition, Luciano calculated the amounts allegedly stolen based on notes he had prepared the week before the deposition and the payroll records that defendants had produced in discovery.

Defendants contend that they "discovered" the fraud during the February 7, 2018 deposition. But they do not provide a satisfactory explanation for why they were unable to ascertain plaintiffs' alleged fraud before then. This was not "new evidence," as defendants

otherwise maintain.[3]  The documents that led to this discovery—plaintiffs' payroll records and time sheets—had been in defendants' possession at every point since plaintiffs worked for Reliable.  Defendants informally produced them for plaintiffs as early as January 2017.  Moreover, plaintiffs shared their overtime calculations in March 2017, and counsel for both sides exchanged emails and met in person to discuss these payroll records multiple times through January 2017.  Defendants offer no reason as to why these documents did not reveal the alleged fraud before Luciano's deposition—nearly 18 months after this lawsuit was filed.  Even if the court takes into account defendants' change in counsel in June 2017, defendants still would have had over seven months to review plaintiffs' payroll records with current counsel.  Defendants otherwise make no showing of diligence that would excuse ignorance of facts contained in their own records.  *See Shofner v. Shoukfeh*, 2017 WL 3841641, at *2 (N.D. Tex. Apr. 7, 2017) (Cummings, J.) (declining to grant leave to amend under Rule 16(b)(4) when plaintiff "had access to all of [relevant] medical records early in the case, yet waited more than a year after filing suit to first hire expert witnesses to review the records"); *Mendez v. Texas*, 2015 WL 6468002, at *2 (N.D. Tex. Oct. 26, 2015) (Lindsay, J.) (declining to grant leave to amend under Rule 16(b)(4) when plaintiff "fail[ed] to show that

---

[3]Defendants state that Luciano "testified that the records could not be his because he did not 'know how to use the computer.'"  Ds. Mot. for Leave 4.  It is unclear whether this statement is meant to convey that Luciano did not prepare the records, or that Reliable did not have possession of these records.  If the latter, Luciano's statement is belied by the fact that defendants produced these records for plaintiffs.  If the former, the statement is inconsequential due to the amount of time during this litigation that defendants have had the opportunity to review the records.

he exercised reasonable diligence").

In regard to amending the admissions in their answer, defendants provide no explanation for why they were unable to seek leave to amend before the deadline. Their brief does not address these changes, focusing instead only on the fraud counterclaim and affirmative defense. The evidence indicates that, at the time defendants filed their answer, they were aware of the facts on which they now rely to support their motion to amend: Daniel's extent of control over Reliable's employees and whether Reliable qualifies as an enterprise engaged in commerce under the FLSA. Therefore, with no plausible explanation for either set of proposed amendments, this factor heavily favors denying leave to amend for both sets of proposed amendments.

2

The second factor considers the importance of the amendment. Defendants contend that the requested amendments are "very important" and critical to the effective defense of this case. They do not explain these conclusory statements further, and plaintiffs do not address this argument. The court has previously found other proposed amendments to be important where they "potentially provide additional grounds for [a party] to recover," *Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 2009 WL 3074618, at *37 (N.D. Tex. Mar. 30, 2009) (Fitzwater, C.J.), or "directly affect[ ] [a party's] prospects of ultimate recovery," *The Richards Group, Inc. v. Brock*, 2008 WL 1722250, at *2 (N.D. Tex. Apr. 14, 2008) (Fitzwater, C.J.). Because assuming that the amendment is important does not affect the

court's assessment of the four factors holistically, the court will assume *arguendo* that the amendment is important.

3

The court next considers the third factor: the potential prejudice in allowing the amendment. Defendants maintain that plaintiffs would face no prejudice if the answer were amended. They contend that "the matters relating to the counterclaims were fully examined during the deposition of Luciano." Ds. Mot. for Leave 9. Plaintiffs disagree, contending that their deposition of Luciano was limited because "all that mattered for the purposes of Plaintiffs' FLSA claims was that defendants knew or should have known that Plaintiffs were not properly paid for their overtime hours." Ps. Resp. to Mot. to Amend 10 (emphasis omitted). Plaintiffs maintain that, if defendants are permitted to allege a fraud counterclaim added, plaintiffs will need to conduct additional discovery regarding defendants' allegation that their bookkeeper permitted plaintiffs to receive hourly pay. Plaintiffs contend that, at the conclusion of this additional discovery, they will likely need to move for summary judgment again.

The court concludes that granting leave to add a fraud counterclaim would prejudice plaintiffs. Defendant did not file their motion for leave until after the conclusion of discovery and after both parties have moved for summary judgment, and the case is now set for trial.[4] It would be necessary for plaintiffs to conduct additional discovery at a late stage

_____

[4]At the time the motion for leave was filed, the trial had not been scheduled.

in the case.  Although defendants are correct that the alleged fraud addresses the same

subject matter as the overtime claim, the proposed counterclaim significantly changes the

scope of the litigation.  Defendants allege that multiple bookkeepers played a significant role

in allowing plaintiffs to artificially receive hourly pay and artificially inflate their hours.

Plaintiffs—and perhaps even defendants—would need to gather evidence relevant to the full

extent of these allegations.  At the same time, the parties would likely seek leave to file

additional summary judgment motions.  If such leave were granted, this would "result in an

increase in the expenses of this litigation, and delay the court-imposed schedule." *Curtis v.*

*State Farm Lloyds*, 2004 WL 1621700, at *7 (S.D. Tex. Apr. 29, 2004) (Rosenthal, J.).

> [S]uch delays are a particularly abhorrent feature of today's trial
> practice.  They increase the cost of litigation, to the detriment of
> the parties enmeshed in it; they are one factor causing disrespect
> for lawyers and the judicial process; and they fuel the increasing
> resort to means of non-judicial dispute resolution.  Adherence
> to reasonable deadlines is critical to restoring integrity in court
> proceedings.

*Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990).

4

The fourth factor considers the availability of a continuance to cure any prejudice.

Much of the potential prejudice to plaintiffs would likely be remedied by appropriate

modifications of the scheduling order.  The trial is scheduled for the two-week docket of

January 22, 2019, approximately six months from now, leaving a buffer for additional

discovery.  Although it is uncertain whether the trial would also need to be continued, this

factor favors granting leave to amend.

5

Finally, the court considers the four factors holistically. "It does not mechanically count the number of factors that favor each side. And it remembers at all times that the good cause inquiry focuses on the diligence of the party seeking to modify the scheduling order." *E.E.O.C. v. Serv. Temps, Inc.*, 2009 WL 3294863, at *3 (N.D. Tex. Oct. 13, 2009) (Fitzwater, C.J.), *aff'd*, 679 F.3d 323 (5th Cir. 2012).

Assessing the four factors together, the court concludes that defendants have not demonstrated good cause to modify the scheduling order. Defendants fail to provide a plausible explanation for their delay, given that the documents on which defendants base their fraud claim were defendants' own payroll records. These records had been collected and sent to plaintiffs by January 2017, discussed by the parties in March 2017, exchanged again in August 2017, and discussed again by the parties in December 2017. Defendants had every reason to assess plaintiffs' claims for potential fraud at each of these stages. Similarly, facts about Reliable's business relevant to the admissions defendants wish to change were available to defendants at the time they filed their answer. Nevertheless, they offer no explanations for being unable to seek leave to amend before the deadline. This lack of diligence, along with the potential prejudice to plaintiffs, overwhelms the factors that favor granting leave to amend.

Without these amendments, defendants are still able to contend that the payroll

records are inaccurate as to hours worked in the course of addressing FLSA claims, and may still be able to pursue fraud claims in state court. But defendants have not made the showing of good cause that is required for leave to amend under Rule 16(b)(4). The court therefore denies defendants' motion for leave to amend.[5]

III

The court now addresses plaintiffs' motion for partial summary judgment and defendants' motion for summary judgment.

Defendants are moving for summary judgment on claims for which plaintiffs will have the burden of proof at trial. Because plaintiffs will have the burden of proof, defendants' burden at the summary judgment stage is to point the court to the absence of evidence of any essential element of plaintiffs' claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once they do so, plaintiffs must go beyond their pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in plaintiffs' favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Plaintiffs' failure to produce proof as to any essential element of the claim renders all other facts immaterial. *TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.).

---

[5]Because the court finds that defendants have not demonstrated the good cause required by Rule 16(b)(4), it does not reach the question whether defendants would meet the more lenient standards of Rule 15(a)(2).

Summary judgment is mandatory where plaintiffs fail to meet this burden. *Little*, 37 F.3d at 1077.

Because plaintiffs will have the burden of proof at trial on their FLSA overtime claim, to be entitled to summary judgment they "must establish 'beyond peradventure all of the essential elements of the claim[.]'" *Bank One, Tex. N.A. v. Prudential Co. Of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that plaintiffs must demonstrate that there are no genuine and material fact disputes and that they are entitled to summary judgment as a matter of law. *See Martin v. Alamo Cmy. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marin Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

IV

A

The FLSA requires that employers pay employees who work more than 40 hours per week 1½ times their regular pay rate for each hour of overtime. 29 U.S.C. § 207(a)(1). An employee bringing an action for unpaid overtime compensation must first demonstrate by a preponderance of the evidence: (1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage

requirements; and (4) the amount of overtime compensation due.  *See, e.g., Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014); *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005) (citing *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946), *superseded by statute on other grounds* by Portal-to-Portal Act of 1947, 29 U.S.C. § 254); *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995).  Once the employee establishes a prima facie case, the burden then shifts to the employer to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence."  *Harvill*, 433 F.3d at 441 (quoting *Anderson*, 328 U.S. at 687-88).

B

Plaintiffs move for partial summary judgment, maintaining that the undisputed facts demonstrate that Reliable, Luciano, and Daniel are liable for unpaid overtime under the FLSA.  They contend that they were employed in an enterprise covered by the FLSA; that they worked for defendants in excess of 40 hours per week, but were not compensated with FLSA-mandated overtime pay; that they were defendants' employees and were not independent contractors; and that each defendant was an employer or joint employer under the FLSA.  Plaintiffs maintain that only two issues—whether defendants' FLSA violations were willful and the specific amount of plaintiffs' damages—remain for trial.

Defendants move for summary judgment on all of plaintiffs' FLSA claims.  They posit that plaintiffs were independent contractors, not employees, as defined by the FLSA; that neither Reliable, Luciano, nor Daniel qualifies as an employer; and that neither plaintiffs nor

defendants were engaged in commerce as required by the FLSA.  Defendants contend that, as a result, plaintiffs have provided no evidence that the FLSA overtime provisions apply. Defendants aver that, even if the FLSA overtime provisions do apply, plaintiffs have presented no evidence of overtime hours worked, and that there is no evidence that any violation was willful.

V

The court begins by addressing whether plaintiffs were employees.

A

Employee status is based on the economic realities of the relationship; the subjective beliefs of the alleged employees or employers are irrelevant to a worker's status.  *See Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1049 (5th Cir. 1987).  "The definition of employee under the FLSA is particularly broad," and the contractual designation of the worker as an independent contractor is not necessarily controlling.  *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343, 346 (5th Cir. 2008) (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)) (noting that the FLSA "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles").  Instead, to determine whether a worker qualifies as an employee under the FLSA, courts in this circuit focus on "whether the alleged employee so economically depends upon the business to which he renders his services, such that the individual, as a matter of economic reality, is not in business for himself."  *Thibault v. BellSouth Telecomms., Inc.*, 612 F.3d 843, 845 (5th Cir. 2010) (citing *Carrell v. Sunland Constr., Inc.*, 998 F.2d 330,

- 17 -

332 (5th Cir.1993)). To aid in this inquiry, the court considers five non-exhaustive factors:

> (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship. No single factor is determinative. Rather, each factor is a tool used to gauge the *economic dependence* of the alleged employee, and each must be applied with this ultimate concept in mind.

*Hopkins*, 545 F.3d at 343 (emphasis in original) (citations omitted). The ultimate determination of whether an individual is an employee under the FLSA is a legal, not a factual, determination. *Brock*, 814 F.2d at 1045. But application of the five-factor test of economic dependence "will require a factual inquiry and a full record of the applicable facts." *Gate Guard Servs. L.P. v. Solis*, 2011 WL 2784447, at *10 (S.D. Tex. July 12, 2011).

B

The court first considers the degree of control that Reliable exercised. Reliable maintains that they "would only tell [the workers] where they had to go," and did not require workers to adhere to any particular schedule. Ds. App. 13. Defendants also contend that neither Luciano nor Daniel checked a worker's cleaning performance, except when a client complained.

Plaintiffs respond that defendants controlled the meaningful economic aspects of the business. They contend that every day they worked for Reliable, for at least part of the day, either Daniel, Luciano, or another Reliable employee, or other employees of companies that contracted with Reliable, were personally present supervising their work and instructing them

- 18 -

both what to do and how to do it.  Plaintiffs posit that Reliable exercised control over its workers by firing those who arrived late, who missed work, or who refused to work according to the schedule and in manner Reliable required.

Degree of control refers to whether the plaintiff possesses "real independence" in the economic relationship.  *Hopkins*, 545 F.3d at 343.  "Control is only significant when it shows an individual exerts such a control over a meaningful part of the business that [he] stands as a separate economic entity."  *Brock*, 814 F.2d at 1049; *see also Reich v. Priba Corp.*, 890 F. Supp. 586, 592 (N.D. Tex. 1995) (Fish, J.).  But "the lack of supervision over minor regular tasks cannot be bootstrapped into an appearance of real independence."  *Brock*, 814 F.2d at 1049.

Here, the evidence in the summary judgment record directly conflicts as to several variables relevant to plaintiffs' degree of control, including whether Reliable set the plaintiffs' daily schedule, the method of control, and the amount of supervision that Reliable exercised over its workers.  Although it is well settled that a conclusory declaration is insufficient for a nonmoving party to survive summary judgment, *see, e.g. Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 346 (5th Cir. 2007) (citing *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992)), plaintiffs' declarations include detailed facts about the manner in which they worked, were supervised, and were compensated.[6]  At the same time,

---

[6]Defendants object to consideration of plaintiffs' declarations.  They point to typographical errors on two of the three translator's certificates accompanying declarations, which contain a placeholder for the translator's qualification.  In maintaining that these declarations should be stricken, defendants cite *Galeana Sanchez v. Trevino Ruiz*, 2017 WL

Luciano's and Daniel's testimony would permit a reasonable jury to find that they minimally supervised plaintiffs' day-to-day work.[7]  The court concludes that the material evidence conflicts, and that there are genuine, material fact issues.  Resolution of these disputed facts could have a significant bearing on whether the degree of control factor weighs in favor of employee or independent contractor status. The court thus concludes that fact issues prevent it from determining what status the degree of control factor indicates, and prevent both parties from satisfying their respective summary judgment burdens regarding the control factor.

C

The second factor focuses on the extent of the relative investments of the worker and the alleged employer.

---

4351716 (S.D. Tex. Sept. 29, 2017).  In *Galeana Sanchez* the court held that the plaintiff's declarations were translated by "more than a mere language conduit" when the declaration did not identify the translator or summarize the translator's qualifications. *Id.* at *4 (citing *United States v. Cordero*, 18 F.3d 1248, 1253 (5th Cir. 1994)).  As a consequence, the court struck the declarations.  Here, however, all of the declarations identify the same translator, and one declaration provides a full summary of her qualifications, declares that she is unaffiliated with the plaintiffs, and certifies the accuracy of the translation.  Therefore, typographical errors aside, the court will consider plaintiffs' declarations as part of the summary judgment evidence.

[7]"When this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact." *Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at * 17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.)).  Here, and throughout this memorandum opinion and order, the court will summarize or provide examples of evidence that present genuine and material fact issues that require a trial.

Defendants maintain that plaintiffs invested more in the cleaning business than did Reliable, Luciano, and Daniel. They contend that plaintiffs supplied their own equipment and materials—such as ladders, extensions, and cleaning supplies—for the cleaning work, while defendants supplied nothing. Plaintiffs respond that these were "small-ticket" items when compared to defendants' expenses in maintaining corporate offices and other items needed to maintain a business with $1.5 million in annual sales. Plaintiffs point to *Hopkins*, 545 F.3d 338, where in reviewing a summary judgment the panel held that the defendant's investment, *inter alia*, in office space outweighed the investment made by any one plaintiff sales leader. *Id.* at 344.

Plaintiffs reliance on *Hopkins* is misplaced. The relevant investments are not those contributed to the defendants' business as a whole, but instead "the amount the alleged employer and employee each contribute to *the specific job* the employee undertakes." *Thibault v. Bellsouth Telecomms., Inc.*, 612 F.3d 843, 847 (5th Cir. 2010) (emphasis added) (citing *Carrell v. Sunland Constr., Inc.*, 998 F.2d 330, 333 (5th Cir. 1993)). The *Hopkins* opinion suggests that the plaintiff sales leaders in fact used the corporate offices that the defendant provided: i.e., that the office space was germane to the job the sales leaders performed. Here, however, a reasonable jury could not find on the present summary judgment record that plaintiffs used Reliable's corporate space in relation to their cleaning work. Instead, a reasonable jury could find that plaintiffs supplied all of the material used in the course of performing cleaning work for Reliable. Therefore, plaintiffs have not established beyond peradventure that the relative investments favor the finding that they were

employees.  Nor are defendants entitled to summary judgment based on this factor alone.  Although this factor weighs in favor of independent contractor status, it is not dispositive when considered along with the other pertinent factors.

D

Under the third factor, the court considers the degree to which the worker's opportunity for profit or loss is determined by the alleged employer.

Plaintiffs maintain that they "simply received hourly rates for the repetitive manual labor that was assigned to them."  Ps. Mot. 9.  Defendants dispute whether the wage was hourly, insisting instead that they paid plaintiffs a weekly salary based on each job.  Moreover, Luciano states that when plaintiffs informed him that "they had their skills and that they were going to make money for me, that they were going to manage their own, and that we were not going to lose money," it indicated that their "business savvy" would determine their individual profits.  Ds. App. 37.

There are genuine and material factual disputes that preclude a definitive conclusion about which side this factor favors.  Some facts indicate that defendants alone determined plaintiffs' income.  Regardless whether the wages were weekly or hourly, they were predetermined and controlled by defendants.  On the other hand, the parties advance conflicting evidence as to how much of plaintiffs' work was compensated on a per-job basis.  If paid purely on a per-job basis, plaintiffs would be able to exercise more control on the number of jobs they were willing to accept.  With these facts in dispute, the court is unable to determine as a matter of law whether this factor favors either side.

E

The fourth factor examines the skill and initiative required in performing the job.

Defendants contend that many of plaintiffs' tasks—particularly high-rise window washing—required a unique skill set that supports independent contractor status. Luciano testified in his deposition that the task requires both special training and experience, and that plaintiffs "presented their services as specialized, and I subcontracted them on that basis." Ds. App. 33. Regarding efficiency, defendants maintain that plaintiffs were contracted on a job rate basis, and that therefore if they finished jobs faster, they would complete more work and increase their total pay.

Plaintiffs maintain that they only performed unskilled or low-skilled labor for Reliable. They contend that the work consisted of "general cleaning on commercial buildings, window cleaning, post-construction clean-up, and various construction related tasks such as demolition, painting, and repair or remodeling work, together with crews usually consisting of approximately 3 to 10 other employees of Reliable." Ps. App. 4. Likewise, they posit that their work was primarily paid by the hour, although they acknowledge that, for certain jobs, they would be paid a flat amount regardless of hours worked.

Courts generally "look for some unique skill set . . . or some ability to exercise significant initiative within the business." *Hopkins*, 545 F.3d at 345. To satisfy this element, plaintiffs must produce evidence that they could not "exert initiative in the operation of [the] business." *Hickey v. Arkla Indus., Inc.*, 699 F.2d 748, 752 (5th Cir. 1983). "Routine work

which requires industry and efficiency is not indicative of independence and nonemployee status." *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1314 (5th Cir. 1976).

Again, there are genuine, material factual disputes that prevent the court from determining which status this factor favors. The parties agree that much of the work was indeed low skilled. But the evidence conflicts as to how much work was paid by job as opposed to hours worked. If paid on a per-job basis, plaintiffs would be able to exercise more initiative because their efficiency would directly affect their profit. *See Eberline v. Media Net, L.L.C.*, 636 Fed Appx. 225, 229 (5th Cir. 2016) (per curiam) (holding that "testimony that installers could receive more installation jobs, and thus more profits," supported conclusion that plaintiff cable installers could exert initiative in operation of business). With these facts in dispute, the court is unable to conclude as a matter of law that this factor favors one side over the other.

F

Under the fifth factor, the court considers the permanency of the relationship between the worker and the alleged employer.

Defendants maintain that plaintiffs' working relationship was not exclusive. Luciano testified in his deposition that each plaintiff either performed cleaning services for other companies or maintained his own cleaning business on the side. Defendants also contend that plaintiffs' relationship with Reliable was not continuous, and that they were free to come and go as they pleased. Plaintiffs posit that, while they worked for Reliable, they had no other "full-time jobs," and that because they worked so many hours for Reliable they were

precluded from working significant hours for any other employer.

This factor weighs in favor of employee status when the work is done continuously and for a long period of time, but evidence that the worker provided similar services to others simultaneously weighs in favor of independent contractor status. *See, e.g., Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1384-85 (3d Cir. 1985) (holding that researchers who worked continuously for long periods of time and did not, for the most part, simultaneously do similar work for other companies were employees under the FLSA); *Hickey*, 699 F.2d at 752 (affirming district court finding of independent contractor status in age discrimination suit where, although plaintiff worked for company for ten years, he "was capable of terminating relations with [defendant] upon 30 days notice and taking his business organization and talents to other manufacturers of similar or different products").

As with some of the other factors, the summary judgment evidence conflicts as to this factor. It is undisputed that Lopez, Gomez, and Huesca worked for Reliable continuously for an extended period of time. But at the same time, there is evidence that indicates that all three held additional jobs and were free to set their own schedules. Therefore, the court holds that there are genuine and material factual disputes that prevent it from determining whether this factor favors employee or independent contractor status as a matter of law.

G

It is common in FLSA cases that "there are facts pointing in both directions" regarding the issue of employee status. *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 305 (5th Cir. 1998) (quoting *Carrell*, 998 F.2d at 334). Certain

undisputed facts indicate that one factor weighs in favor independent contractor status. Nevertheless, the court is unable to determine which status four factors favor due to genuine disputes of material fact.

For example,[8] a reasonable jury could find that plaintiffs were employees based on the evidence that each plaintiff worked for Reliable continuously for an extended period of time, that plaintiffs were paid only through rates set by Reliable, and that Luciano and Daniel exercised some degree of supervision over plaintiffs. But certain undisputed facts favor classifying plaintiffs as independent contractors, such as their relative investments in materials. In the face of this conflicting evidence, the jury's weighing of the proof and assessment of the pertinent factors may hinge on an assessment of the credibility of the witnesses. This type of resolution is appropriate for a trier of fact, not for the court at the summary judgment stage. *See Leonard v. Dixie Well Serv. & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir. 1987) ("The Supreme Court has not, however, approved summary judgments that rest on credibility determinations.").

Thus the court concludes that, because there are genuine issues of material fact, defendants motion for summary judgment fails on this issue. For this same reason, the court also holds that plaintiffs have failed to establish beyond peradventure that they qualify as employees. As a result, the court denies plaintiffs' motion for partial summary judgment on

---

[8]The court's recitation of the evidence that supports each side is not intended to be exhaustive given its typical practice not to set out in detail the evidence that creates a genuine issue of material fact. *See supra* note 7.

defendants' unpaid overtime liability. *See, e.g., Wherley v. Schellsmidt*, 2013 WL 5744335, at *6 (N.D. Tex. Oct. 23, 2013) (Fitzwater, C.J.) (denying summary judgment motion on issue of whether plaintiff was employee or independent contractor where fact issues precluded court from deciding, as to certain of factors of five-factor test, whether factor suggested employee or independent contractor status); *Trahan v. Honghua Am., LLC*, 2013 WL 2617894, at *12 (S.D. Tex. June 10, 2013) (same).[9]  Having concluded that plaintiffs cannot establish all the essential elements of their claim beyond peradventure, the court addresses the remaining factors of their FLSA claim only in the context of defendants' motion for summary judgment.

VI

The court next considers whether there is a genuine fact issue as to whether any defendant was an employer under the FLSA.

A

The Fifth Circuit relies on the economic reality test when determining a party's status as an employer under the FLSA.  *See, e.g., Gray v. Powers*, 673 F.3d 352, 354 (5th Cir.

_____

[9]Because the factors above are non-exhaustive, courts typically consider any other evidence that the parties offer bearing on whether a plaintiff is an "employee" under the FLSA. *See Hopkins*, 545 F.3d at 346; *Herman*, 161 F.3d at 305.  Here, plaintiffs maintain that the fact that defendants prepared W-2 forms for their workers indicates that plaintiffs are employees. But defendants point out that plaintiffs signed agreements indicating that they were independent contractors.  The court concludes that the other factors on which plaintiffs rely are insufficient to overcome the conclusion that they have not shown their employee status beyond peradventure. At the same time, these other factors also contribute to the genuine dispute of material fact that prevent defendants from prevailing on their summary judgment motion.

2012).  Under the economic reality test, the court evaluates "whether the alleged employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Id.* at 355 (citation and internal quotation marks omitted).  A party need not, however, establish each element in every case. *Id.* at 357.  "The dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies."  *Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247, 251 (5th Cir. 2012) (citation and internal quotation marks omitted).  Moreover, "[t]he remedial purposes of the FLSA require the courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications."  *McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989) (per curiam), *modifying* 861 F.2d 450 (5th Cir. 1988).

B

Defendants maintain that plaintiffs have produced no evidence that would allow a reasonable jury to find that either Reliable Brothers, Reliable Clean-Up, Luciano, or Daniel was an employer.  They aver that Daniel is merely a passive owner of Reliable with no power over its employees.  As to Luciano, defendants contend that, although he had the power to hire and fire employees, plaintiffs were independent contractors; that Luciano had no control over plaintiffs' work schedules or conditions; that plaintiffs ignored Luciano's attempts to determine their rate and method of payment; and that Luciano maintained no

relevant employment records. Defendants further posit that, because Luciano directs and runs both Reliable Brothers and Reliable Clean-Up, neither Reliable entity is an employer under the FLSA. Plaintiffs respond that the summary judgment evidence is sufficient for a reasonable jury to find that defendants were employers or joint-employers under the FLSA. The court agrees with plaintiffs.

There is sufficient evidence to enable a reasonable jury to find that each defendant was an employer under the FLSA. For example,[10] defendants' answer to the complaint admits that Daniel and Luciano are the sole corporate officers and owners of Reliable Clean-Up and Reliable Brothers, and that both have the power to establish pay practices and hire and fire workers. *See* Answer ¶¶17 and 18. Beyond the admissions in defendants' answer, many of the material fact disputes regarding the plaintiffs' alleged employee status—discussed *supra* at § V—are relevant to whether defendants are employers, including the amount of control and supervision Daniel and Luciano exerted over plaintiffs' work. *See Martin*, 688 F.3d at 251. And, as the court has explained, this is a genuine, material disputed fact. Therefore, the court also holds that there is a genuine fact issue concerning whether defendants were employers under the FLSA.

VII

Defendants contend that they are also entitled to summary judgment because plaintiffs have not adduced any evidence showing that either Reliable Clean-Up or Reliable Brothers

---

[10]*See supra* note 7.

is an "enterprise engaged in interstate commerce" subject to coverage under the FLSA.

## A

To establish a claim for overtime compensation under the FLSA, a plaintiff must prove that he was an "employee[] engaged 'in the production of goods for commerce' ('individual coverage') or 'employed in an enterprise engaged in commerce or in the production of goods for commerce' ('enterprise coverage')." *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992) (citing 29 U.S.C. § 207(a)(1)).[11]  The FLSA defines "enterprise engaged in commerce or in the production of goods for commerce" as one that:

> (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000[.]

29 U.S.C. § 203(s)(1)(A).

## B

Defendants maintain that plaintiffs have presented no evidence that either Reliable Clean-Up or Reliable Brothers satisfies the FLSA's "engaged in commerce" requirement. They contend that neither Luciano's deposition testimony nor any other evidence indicates

---

[11]"Commerce," under the FLSA, "means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). In other words, "commerce" refers to interstate commerce. *Morrow v. J W Elec., Inc.*, 2011 WL 5599051, at *2 (N.D. Tex. Nov. 16, 2011) (Fitzwater, C.J.) (citing *Polycarpe v. E & S Landscaping Serv., Inc.*, 616 F.3d 1217, 1221 (11th Cir. 2010)).

that Reliable's business was anything other than local, and therefore that plaintiffs cannot prove either individual or enterprise coverage. Plaintiffs respond that defendants have admitted enterprise coverage in their answer. The court agrees with plaintiffs.

In their complaint, plaintiffs allege that "[d]uring all of the relevant time period, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA[.]" Compl. ¶14. Defendants "admit the allegations contained in paragraph 14 of the complaint." Answer ¶14. The court may consider admissions as support for factual positions at the summary judgment stage. *See In re Carney*, 258 F.3d 415, 420 (5th Cir. 2001) ("Federal Rule of Civil Procedure 56(c) specifies that 'admissions on file' can be an appropriate basis for granting summary judgment."). Therefore, the court holds that defendants have failed to demonstrate the absence of evidence that Reliable is an enterprise engaged in commerce subject to the FLSA.

VIII

The court now addresses whether plaintiffs have produced evidence that they worked more than 40 hours in any given week.

A

"An employee bringing an action pursuant to the FLSA, based on unpaid overtime compensation, must first demonstrate that [he] has performed work for which [he] alleges [he] was not compensated." *Kirk v. Invesco, Ltd.*, 700 Fed. Appx. 334, 336 (5th Cir. 2017) (per curiam) (quoting *Harvill*, 433 F.3d at 441). Where accurate time records are

unavailable an employee has met this burden of proof if he "proves that [he] has in fact performed work for which [he] was improperly compensated and if [he] produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* (quoting *Anderson*, 328 U.S. at 687). "The burden [then] shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* (alterations in original) (quoting *Anderson*, 328 U.S. at 687-88).

To raise a "just and reasonable inference" as to the amount and extent of his work, an employee need not prove "the precise extent of uncompensated work." *Anderson*, 328 U.S. at 687. Evidence of hours worked need not be "perfectly accurate" as long as it provides "a sufficient basis to calculate the number of hours worked by each employee." *Marshall v. Mammas Fried Chicken, Inc.*, 590 F.2d 598, 598 (5th Cir. 1979) (citing *Hodgson v. Jones*, 434 F.2d 1061, 1061 (5th Cir. 1970)). Under this standard, the court may draw inferences from oral testimony, sworn declarations, and any other relevant documentary evidence that the plaintiff produces. *See Garner v. Chevron Phillips Chem. Co.*, 834 F.Supp.2d 528, 546 (S.D. Tex. 2011). The evidence may be anecdotal and imprecise, but mere assertions will not suffice. *Harvill*, 433 F.3d at 441.

The FLSA makes clear that employers, not employees, bear the ultimate responsibility for ensuring that employee time sheets are an accurate record of all hours worked by employees. 29 U.S.C. § 211(c); *Anderson*, 328 U.S. at 687; *see also Walton v.*

*United Consumers Club, Inc.*, 786 F.2d 303, 314-15 (7th Cir. 1986) (holding that because the FLSA requires "every employer to keep an accurate record of hours worked by each employee," the employer, rather than the employees, must suffer the consequences of inaccurate time sheets); *see also Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2004 WL 1882449, at *4 (N.D. Ill. Aug. 18, 2004) (holding that employer cannot "escape its responsibility to pay employees for all time worked by relying solely on the hours reported on employees' time sheets").

B

Defendants maintain that plaintiffs cannot prove that they worked overtime hours. They contend that none of the documentary evidence submitted by plaintiffs is admissible, and therefore cannot be considered at summary judgment; that even if this evidence is considered, it is unreliable because plaintiffs artificially inflated the number of hours that they worked; and that without this evidence, plaintiffs are only left with conclusory declarations. Defendants also posit that, even if the documents can be considered, at most they only prove that plaintiffs worked overtime "sporadically," and that defendants had no knowledge that plaintiffs were working overtime.

Plaintiffs contend that there is extensive evidence indicating that each plaintiff worked in excess of 40 hours per week, without the required overtime compensation. They aver that their documentary evidence—handwritten time sheets, pay stubs, payroll reports, and weekly payroll summaries—conclusively show that they worked uncompensated

overtime. Plaintiffs also maintain that this evidence is admissible because it has been authenticated by each plaintiff, who has personal knowledge of the content.

C

The court first addresses the evidentiary objections. Defendants object, *inter alia*, to the use of plaintiffs' handwritten time sheets as summary judgment evidence. They maintain that the time sheets are inadmissible hearsay, and that no exception to the hearsay rule applies because plaintiffs have not certified them as business records. The court holds that the contents of the time sheets can be considered as summary judgment evidence.

"Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . , the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017), *as revised* (July 5, 2017) (alterations in original) (quoting 11 Moore's Federal Practice-Civil ¶ 56.91 (2017)). In *Lee* a district court granted summary judgment against the plaintiff's negligence case for lack of causation evidence, discounting an unsworn witness report as inadmissible. The panel vacated and remanded, directing the district court to consider "whether the particular material to which the [evidentiary] objection is lodged can or cannot 'be presented in a form that would be admissible at trial'" *Id.* at 355-56 (quoting Rule 56(c)); *see also Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 538 (4th Cir. 2015) (recognizing that a "court may consider . . . the content or substance of otherwise inadmissible materials where

- 34 -

the party submitting the evidence show[s] that it will be possible to put the information . . . into an admissible form." (alteration in original) (internal quotation marks and citation omitted)); *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293-94 (11th Cir. 2012) (determining that district court may consider statement "if the statement could be reduced to admissible evidence at trial or reduced to admissible form." (citation omitted)).

The court concludes that the contents of plaintiffs' time sheets could be presented in a form admissible at trial. Each plaintiff avers in his declaration that he filled out these time sheets to record the hours he worked. *See* Ps. App. 5, 129, and 166. Moreover, according to plaintiffs' evidence, each plaintiff filled out the time sheets weekly and submitted them to Reliable's bookkeeper. *Id.* Accordingly, although the time sheets are at this point inadmissible hearsay,[12] the contents of the time sheets or of certain entries could nonetheless be admissible at trial. For example, each plaintiff could provide testimony based on his personal knowledge that is consistent with the contents of the time sheets. *See* Fed. R. Evid. 602. Similarly, the time sheets could be used to refresh the respective plaintiff's recollection during his testimony. *See* Fed R. Evid. 612(a)(1)-(2). Because the contents of the time sheets could be presented in a form that would be admissible at trial, they may be considered on summary judgment.[13] *See Brown v. Kastle Sys. of Tex. LLC*, 2010 WL 3342219, at *2

---

[12]The time sheets are hearsay because they are plaintiffs' out-of-court statements offered for the truth of the matter asserted: the number of hours each plaintiff worked in a given week. And it is not evident that plaintiffs can satisfy the business records exception.

[13]Because the court only examines the time sheets in concluding that plaintiffs have produced sufficient evidence to survive defendants' summary judgment motion, it need not

n.4 (S.D. Tex. Aug. 25, 2010) (Rosenthal, J.) (holding that journal could be considered at summary judgment stage because its contents could be introduced through live testimony or to refresh witness's recollection); *Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003) (holding that diary could be considered at summary judgment stage because its contents could be introduced through live testimony or to refresh witness's recollection).

## D

Having addressed defendants' pertinent objections, the court holds that plaintiffs' time sheets and declarations together would enable a reasonable jury to form the reasonable inference that each plaintiff worked an amount of overtime hours for which he was not adequately compensated under the FLSA. This evidence goes beyond "mere assertions." Plaintiffs Lopez, Gomez, and Huesca have each produced time sheets that can establish the number of hours worked in several given weeks. *See, e.g.,* Ps. App. 20-21 and 24-25 (recording that Lopez worked 51.5 hours the week of February 17, 2014, and 54 hours the week of March 3, 2014, respectfully); *id.* at 146-47 and 150-51 (recording that Gomez worked 54.5 hours the week of February 24, 2014, and 54.5 hours the week of March 10, 2014, respectfully); *id.* at 179-80 and 181-82 (recording that Huesca worked 51 hours the week of January 3, 2014 and 59.5 hours the week of February 10, 2014). These plaintiffs also specify in their declarations the hourly rates at which they were paid throughout the time they worked for Reliable. *See id.* at 5, 129, and 166. They explain that—for the weeks

---

address defendants' evidentiary objections to the other documents on which plaintiffs rely.

when Reliable paid them hourly—they were paid at the same rate for all of the hours for they worked in a given week. From this evidence, a jury could make a just and reasonable inference as to the amount and extent of plaintiffs' under-compensated work for Reliable.

Defendants attempt to demonstrate that any inference as to hours worked would be unreasonable by maintaining that plaintiffs fraudulently inflated on their time sheets the hours they worked. In Luciano's deposition, he testified that plaintiffs were to be paid in flat amounts for each job. He stated that these payments were only broken up into hours at plaintiffs' request so that taxes would be withheld in their W-2s. Defendants do not, however, present any contracts establishing these flat rates. Nor do defendants adduce other evidence regarding the relevant question: whether plaintiffs worked fewer than 40 hours during the weeks in question. Therefore, as a matter of law, the reasonableness of the inference cannot be completely negated by defendants' evidence. Instead, it amounts to a genuine fact issue to be resolved by the jury.

E

Defendants maintain that, even if there is evidence that plaintiffs worked over 40 hours in certain weeks, there is not evidence that any defendant was aware of this fact.

1

"An employer who is armed with knowledge that an employee is working overtime cannot stand idly by and allow an employee to perform overtime work without proper compensation." *Ihegword v. Harris Cnty. Hosp. Dist.*, 929 F.Supp.2d 635, 663 (S.D. Tex.

2013) (quoting *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981)) (internal brackets and quotation marks omitted), *aff'd*, 555 Fed. Appx. 372 (5th Cir. 2014). But an employee cannot perform overtime work without the employer's actual or constructive knowledge or contrary to the employer's directives and then assert a right to receive compensation. *Id.* If the employee does not notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours does not constitute an FLSA violation. *Id.* (quoting *Harvill*, 433 F.3d at 441).

Constructive knowledge on the part of the employer exists if by "exercising reasonable diligence" the employer would become aware that the employee was working more than 40 hours per week. *Von Friewalde v. Boeing Aerospace Operations, Inc.*, 339 Fed. Appx. 448, 455 (5th Cir. 2009) (per curiam) (quoting *Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825, 827 (5th Cir. 1973)). To determine whether an employer had constructive knowledge of overtime work, courts consider a non-exclusive list of factors, including: (1) whether the employer was in a position to see the employee's work; (2) whether the employee could perform the job duties during regular working hours; and (3) whether the employee performed overtime work on multiple occasions. performed. *Bermudez v. SunRidge Mgmt. Grp., Inc.*, 2015 WL 12723027, at *2 (N.D. Tex. Apr. 22, 2015) (Solis, C.J.) (citing *Gulf King Shrimp Co. v. Wirtz*, 407 F.2d 508, 515 (5th Cir. 1969)).

To the extent defendants maintain that there is no evidence that they knew that plaintiffs were working over 40 hours a week, the court disagrees.

Plaintiffs present evidence of both actual and constructive knowledge. Plaintiffs aver in their declarations that they submitted numerous time sheets, as instructed by defendants, indicating that they were working more that 40 hours per week. They also state that Luciano, Daniel, and Reliable employees frequently supervised their work. A reasonable jury could find from this evidence that defendants had actual knowledge of plaintiffs' overtime hours. Moreover, plaintiffs have also presented evidence that would enable a reasonable jury to find that defendants had constructive knowledge. The time sheets would establish that plaintiffs performed overtime work multiple times. Similarly, plaintiffs state that they turned these time sheets into Reliable's bookkeeper. In Luciano's deposition, he testifies that he knew the bookkeeper had given the workers these time sheets. Thus a reasonable jury could find that, had defendants exercised reasonable diligence, they would have become aware that plaintiffs were working more than 40 hours per week.

## IX

The court now addresses whether there is evidence that any FLSA violation was willful.

## A

An FLSA claim is ordinarily subject to a two-year limitations period, but if the

plaintiff can demonstrate that the violation was willful, the limitations period is extended to three years. *See* 29 U.S.C. § 255(a); *see also Mohammadi v. Nwabuisi*, 605 Fed. Appx. 329, 332 (5th Cir. 2015) (per curiam). A violation is "willful" if the employer either "'knew or showed reckless disregard for . . . whether its conduct was prohibited by the statute.'" *Singer v. City of Waco, Tex.*, 324 F.3d 813, 821 (5th Cir. 2003) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). "The burden of showing that an FLSA violation was 'willful' falls on the plaintiffs." *Stokes v. BWXT Pantex, L.L.C.*, 424 Fed. Appx. 324, 326 (5th Cir. 2011) (per curiam) (citing *Singer*, 324 F.3d at 821); *see also Samson v. Apollo Res., Inc.*, 242 F.3d 629, 636 (5th Cir. 2001) ("Generally, a plaintiff suing under the FLSA carries the burden of proving all elements of his or her claim."). "The Supreme Court has specifically stated that the word 'willful' refers to conduct that is voluntary, deliberate, and intentional, and not merely negligent." *Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 808 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *McLaughlin*, 486 U.S. at 128). Thus a negligent violation of the FLSA is not willful, "[n]or is a good faith but incorrect assumption that a pay plan complied with the FLSA." *Johnson v. Big Lots Stores, Inc.*, 604 F.Supp.2d 903, 924 (E.D. La. 2009) (citing *McLaughlin*, 486 U.S. at 135).

B

Defendants maintain that there is no evidence of a willful violation and that any evidence that exists supports the finding that any potential violation was inadvertent. They posit that there is an abundance of evidence that establishes a general contractor and

subcontractor relationship; and that Luciano testified that he sought out the opinion of the Department of Labor and two attorneys to ensure that Reliable was in compliance with the FLSA. Plaintiffs respond that there is ample evidence that would support a finding of willfulness or recklessness. They aver that Luciano's own deposition acknowledges that he knew about the FLSA's applicability, and that he offers no additional evidence regarding the expert advice he received regarding the plaintiffs' employment status.

The court holds that there is a genuine issue of material fact as to whether any violations of the FLSA were willful. Luciano's deposition testimony indicates that he has been aware for 15 years that the FLSA requires employers to pay employees time-and-a-half for those hours worked over 40 hours per week. Plaintiffs have also submitted declarations stating that both Luciano and Daniel set their hourly wages, occasionally supervised their work, and gave them time sheets to fill out their hourly wages. Regarding Luciano's attempts to solicit expert advice, his consultation with attorneys and the Department of Labor is corroborated only by his own testimony; he offers no records or additional evidence in support. A reasonable jury could find that defendants either knew or recklessly disregarded that their conduct violated the FLSA. Therefore, the court holds that there is a genuine fact issue regarding willfulness.

\*   \*   \*

Because the court concludes that each plaintiff has produced enough evidence to create a genuine issue of material fact on every element of the unpaid overtime claim, the

court denies defendants' motion for summary judgment. The court denies plaintiffs' motion for partial summary judgment because they have failed to establish beyond peradventure every element of defendants' liability. The court also denies defendants' motion for leave to file a first amended answer and counterclaim.

**SO ORDERED**.

July 27, 2018.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE